<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DIANA WARD,** | |
| Plaintiff, | **Civil Action No. 13-763 (ES)** |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Diana[1] Ward ("Claimant" or "Ms. Ward") seeking review of an Administrative Law Judge's decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, respectively. The Court decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the Court vacates the Commissioner's decision and remands for further administrative proceedings consistent with this Opinion.

---

[1] The Court notes that the caption of the Complaint lists Claimant's name as "Diana," but the materials in the record inconsistently refer to Claimant as "Diana" or "Diane." (*See, e.g.*, D.E. No. 9, Administrative Record ("Tr.") at 39).

**I.     Background**

Ms. Ward is a 52-year-old woman who alleges disability due to numerous impairments, including obesity, diabetes, hypertension, asthma, HIV infection, anemia, and depression. (Tr. at 42, 142). She alleges that her disability commenced on June 29, 2006. (Tr. at 142).

On December 23, 2008 Ms. Ward applied for DIB and SSI. (Tr. at 12). Her application was denied initially on October 9, 2009 and again upon reconsideration on February 24, 2010. (Tr. at 73-78, 79-83, 85-90). Ms. Ward subsequently requested a hearing before an Administrative Law Judge ("ALJ"), and the hearing was held on March 31, 2011 before ALJ Joel H. Friedman ("ALJ Friedman" or "the ALJ"). (Tr. at 9-25, 34-68).

On December 21, 2011, ALJ Friedman issued an unfavorable decision for Claimant, finding that she was not disabled. (Tr. at 12-21). Ms. Ward requested review of the ALJ's decision on January 20, 2012, but the Appeals Council of the Social Security Administration denied her appeal on April 4, 2013. (Tr. at 1-6). Accordingly, the ALJ's decision became the final decision of the Commissioner of Social Security ("Defendant" or "Commissioner"). *See* 20 C.F.R. § 404.981.

On February 7, 2013, Ms. Ward appealed the Commissioner's decision by filing a Complaint with this Court. (D.E. No. 1, Complaint ("Compl.")). The administrative record was filed on July 5, 2013, (D.E. No. 9), and the parties briefed the issues raised by Ms. Ward's appeal. (D.E. No. 16, Brief in Support of Plaintiff Diana Ward ("Pl.'s Br."); D.E. No. 18, Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def.'s Br.")). The matter is now ripe for resolution.

## II. Legal Standards

### A. Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

The Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### B. Standard for Awarding Benefits

To be eligible for DIB or SSI under Titles II and XVI of the Social Security Act, a claimant must establish that he or she is disabled as defined by the Act. *See* 42 U.S.C. §§ 423 (Title II), 1382 (Title XVI). Additionally, claimants seeking DIB must satisfy the insured status requirements set forth in § 423(c), while those seeking SSI must fall within the income and resource limits set forth in §§ 1382a and 1382b.

An individual is deemed disabled under both titles if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

3

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(a) (regarding DIB), 1382c(a)(3)(A) (regarding SSI). The individual's physical or mental impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(a), 1382c(a)(3)(B).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of [20 C.F.R. Part 404, Subpart P] and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4) (DIB), 416.920(a)(4) (SSI). If at any point in this sequence the Commissioner finds that the individual is or is not disabled, the appropriate determination is made and the evaluation stops. *Id.* Proper procedure also requires that the Commissioner determine the

4

individual's residual functioning capacity ("RFC") before proceeding to step four.  20 C.F.R. §§ 404.1520(e), 416.920(e).  RFC is defined as the most the individual is capable of doing despite her limitations, including those that are not severe, and it is based on all relevant evidence in the record.  20 C.F.R. §§ 404.1545(a)(1)-(2), 416.945(a)(1)-(2).

### C. Burden of Proof

The five-step sequential evaluation process involves a shifting burden of proof.  *See Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of proof for the first four steps of the analysis.  *Poulous v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).  The burden then shifts to the Commissioner for the fifth step.  *Id.*; *see also Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (noting that "the burden of production shifts to the Commissioner" at the fifth step (internal quotation marks omitted)).  If the Commissioner cannot meet this burden, then the claimant is deemed disabled and shall receive the benefits sought.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### D. Standards for ALJ's Development of the Record

At step three, the ALJ must consider the medical severity of the claimant's impairment(s) and whether the impairment(s) "meets or equals one of [the] listings in Appendix 1" of 20 C.F.R. Part 404, Subpart P.[2]  *See* 20 C.F.R. § 404.1520(a)(4)(iii).

As the Third Circuit made clear in *Burnett v. Commissioner of Social Security*, an ALJ has a "duty to investigate the facts and develop the arguments both for and against granting benefits."  220 F.3d 112, 120 n.2 (3d Cir. 2000) (internal quotation marks omitted); *see also id.* at 119 (explaining that an ALJ must "set forth the reasons for his decision").  An ALJ must "fully develop

---

[2] This listing of impairments in Appendix 1 "describes, for each of the major body systems, impairments that [are] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a).

the record and explain his findings at step three." *Id.* at 120. Furthermore, "[t]here is no way to review the ALJ's decision [where] no reasons were given for [the ALJ's] conclusion that [the claimant's] impairments in combination did not meet or equal an Appendix 1 listing." *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008).

### III. ALJ Friedman's Decision

ALJ Friedman found Ms. Ward not disabled under the Social Security Act. (Tr. at 21). He arrived at this conclusion after conducting the five-step evaluation process required by 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). (Tr. at 12-21).

At step one, ALJ Friedman determined that Ms. Ward had not engaged in substantial gainful activity since the alleged onset date of June 29, 2006. (Tr. at 15). At step two, ALJ Friedman determined that Ms. Ward suffered from the following severe impairments: HIV infection, obesity, asthma, diabetes, hypertension, and dysthymic disorder. (*Id.*). The ALJ observed that these impairments caused significant limitations in Ms. Ward's ability to perform basic work activities. (*Id.*).

At step three, however, ALJ Friedman found that Ms. Ward did not have an impairment or combination of impairments that met or medically equaled any of the Listings. (*Id.*). As to Ms. Ward's physical impairments, the ALJ addressed Listings 3.03 (asthma), 4.00 (cardiovascular health, hypertension), 9.08 (diabetes), and 14.08 (HIV) and found that Claimant failed to meet the criteria for those Listings. (*Id.*). For a number of these Listings, the ALJ observed that none of the complicating factors noted in the relevant Listing were present. (*Id.*).

The ALJ also mentioned Ms. Ward's obesity in the step-three portion of the decision addressing Ms. Ward's physical impairments. Specifically, ALJ Friedman stated that "there is no longer any specific listing for obesity, but it has been considered in conjunction with her other

6

impairments in arriving at the residual functional capacity herein." (*Id.*). After noting Ms. Ward's obesity, the ALJ did not provide further step-three analysis of her physical ailments.

As to Ms. Ward's mental impairments, ALJ Friedman found that none of her mental impairments met or medically equaled the criteria of Listing 12.04. (*Id.*). In reaching this determination, the ALJ considered whether Ms. Ward's mental impairments satisfied the "paragraph B" criteria for Listing 12.04. (Tr. at 15-16). He concluded that Ms. Ward's impairments failed to meet that criteria because Ms. Ward had only mild restrictions in daily living and only moderate restrictions in social functioning, concentration, persistence, or pace. (*Id.*). He also noted that Ms. Ward experienced no episodes of decompensation of extended duration. (Tr. at 16). Additionally, the ALJ found that Ms. Ward failed to establish the presence of the "paragraph C" criteria for Listing 12.04, though he did not elaborate. (*Id.*).

Prior to proceeding to step four, ALJ Friedman determined Ms. Ward's RFC. The ALJ found that she had the ability to "sit up to six hours, stand/walk up to six hours and lift/carry up to 20 pounds occasionally and ten pounds frequently" within an eight-hour workday. (*Id.*). The ALJ continued the RFC assessment, stating:

> The claimant is able to perform simple, routine, low stress jobs, involving low contact with coworkers and supervisors; and no contact with the general public. The claimant is able to perform work not involving climbing of ladders/ropes/scaffolds or concentrated exposure to hazards; occasional climbing of ramps/stairs; and involving no concentrated exposure to fumes, dust, gases, odors, and respiratory irritants.

(*Id.*).

The ALJ noted that, in making this determination, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (*Id.*). ALJ Friedman noted that Ms. Ward's impairments could reasonably be expected to produce her alleged symptoms, but found that Ms. Ward's

7

statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (Tr. at 17).

At step four, ALJ Friedman found that Ms. Ward was unable to perform any past relevant work. (Tr. at 19). Ms. Ward's past relevant work was as a child care worker (medium, semiskilled work) and as a hospital aide/orderly (heavy, semiskilled work). (*Id.*).

At step five, ALJ Friedman determined that jobs existed in significant numbers in the national economy that Ms. Ward could perform. (Tr. at 20). In reaching this determination, the ALJ consulted with a vocational expert (the "VE") and adopted the VE's opinion that Ms. Ward was capable of performing such jobs as hand packager, assembler, ticket checker, addresser, and stuffer. (Tr. at 20-21). Based upon his analysis of the entire record, ALJ Friedman found Ms. Ward capable of making a successful adjustment to other gainful work and therefore determined that a finding of "not disabled" was appropriate. (Tr. at 21).

## IV.   Discussion

On appeal, Ms. Ward asserts that the Commissioner's decision is not based on substantial evidence and that the ALJ erred at step three of the sequential evaluation process. (Pl.'s Br. at 1, 11, 14).[3] In particular, Ms. Ward argues that the ALJ did not adequately address her obesity at step three and that the ALJ's "cursory summation with regard to [her] obesity violates the *Burnett*

---

[3] Ms. Ward also argues that the Commissioner failed to sustain her burden of establishing at step five that there was no other work in the national economy that Ms. Ward could perform. (Pl.'s Br. at 1, 14). For the reasons discussed below, the Court finds that ALJ Friedman erred at step three and that remand is warranted. Accordingly, the Court does not address Ms. Ward's step-five challenge. *See Jones v. Astrue*, No. 11-4379, 2012 WL 5451528, at *6 (D.N.J. Nov. 5, 2012) ("Because the ALJ's reassessment at Step Three could affect and/or obviate the need to evaluate Plaintiff's impairments at Steps Four and Five, the Court declines to address issues concerning Steps Four and Five at this time."); *Butler v. Astrue*, No. 09-3252, 2010 WL 3908627, at *7 (D.N.J. Sept. 28, 2010) ("[B]ecause the analysis of a disability application is a sequential process, and the analysis has stalled at Step Three, the Court cannot determine whether the ALJ was correct in assessing the fourth and fifth steps, or whether the ALJ's ultimate conclusion that Plaintiff is not totally disabled is supported by substantial evidence.").

test." (*Id.* at 11). Ms. Ward points to the absence of any mention of Social Security Ruling ("SSR") 02-1p (the specific guideline for how to incorporate obesity in the Listings) and contends that the ALJ failed to consider the combined effects of her obesity with her other impairments. (*Id.* at 11-14).

In response, the Commissioner argues that the ALJ conducted a proper step-three assessment. According to the Commissioner, the ALJ "explicitly considered *all* of Plaintiff's symptoms," including her obesity, when determining if Ms. Ward had an impairment or combination of impairments that met or medically equaled a Listing. (Def.'s Br. at 5). The Commissioner points out that ALJ Friedman determined Ms. Ward's obesity to be a severe impairment at step two and then proceeded to find that Plaintiff's impairments, both singly and in combination, did not meet or equal the requirements of a Listing. (*Id.* at 4-5). The Commissioner also claims that the "ALJ explicitly considered obesity at step three, noting that, 'there is no longer any specific listing for obesity but it has been considered in conjunction with her other impairments in arriving' at the RFC." (*Id.* at 5). The Commissioner argues that, as a result, "while the ALJ may not have explicitly cited to SSR 02-1p, . . . the ALJ implicitly reviewed her obesity in accordance with [the] Ruling." (*Id.*). Finally, the Commissioner brings to the Court's attention the Third Circuit's decision in *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005), which held that a remand to discuss Plaintiff's obesity is not required if it would not affect the outcome of the case. (*Id.*).

As the ALJ correctly recognized, there is no longer a specific Listing for obesity. Nonetheless, obesity continues to be relevant to an ALJ's determination of disability. SSR 02-1p "provide[s] guidance on SSA policy concerning the evaluation of obesity in disability claims filed under titles II and XVI of the Social Security Act." SSR 02-1p, 2002 WL 34686281, at *5 (Sept.

12, 2002).  In *Diaz v. Commissioner of Social Security*, the Third Circuit, citing SSR 02-1p, held that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step."  577 F.3d 500, 504 (3d Cir. 2009).  Meaningful consideration demands that an ALJ "clearly set forth the reasons for his decision."  *Id.* (citing *Burnett*, 220 F.3d at 119).  Under *Burnett*, an ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis."  *Jones v. Barnhart*, 364 F.3d at 505.  Instead, "the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  *Id.*

In this case, the development of the record is so bare that the Court cannot determine if the ALJ even considered Ms. Ward's obesity at step three.  As noted above, ALJ Friedman mentions Ms. Ward's obesity only once in the step-three portion of his decision, stating: "There is no longer any specific listing for obesity, but it has been considered in conjunction with her other impairments in arriving at the residual functional capacity herein."  (Tr. at 15).  An RFC assessment does not occur until after the ALJ concludes his step-three analysis.  *See* 20 C.F.R. § 404.1520(a)(4) ("At the fourth step, we consider our assessment of your residual functional capacity . . . ."); (*see also* Def.'s Br. at 3 ("The Commissioner assesses claimant's residual function capacity (RFC) once between steps three and four.")).  Therefore, the ALJ's statement regarding the consideration of Ms. Ward's obesity only establishes that he evaluated her obesity, along with her other impairments, in assessing her RFC; the decision does not indicate if or how the ALJ considered Ms. Ward's obesity during his step-three analysis.

The Third Circuit has held that, if an ALJ states that he or she will explain particular step-three findings when discussing the RFC assessment, then the ALJ is not required to reprint that

10

discussion in the step-three portion of his or her ruling. *Cop v. Comm'r of Soc. Sec.*, 226 F. App'x 203, 208 (3d Cir. 2007) (holding that "the fact that the ALJ included the medical evidence in his discussion of [RFC] (and stated he was doing so), instead of including it twice, does not change [the] result" that the ALJ conducted a proper step-three analysis). Here, however, ALJ Friedman offered little in the RFC portion of the decision to explain how he factored Ms. Ward's obesity into his step-three analysis. Aside from a few statements where he mentions Ms. Ward's weight and height and notes that she was advised to continue losing weight, (Tr. at 17-19), almost nothing else the ALJ mentions relates specifically to Ms. Ward's obesity. Thus, *Cop* is inapplicable. The Court concludes that the ALJ's step-three analysis of Ms. Ward's obesity is deficient because it evades meaningful judicial review.

Additionally, this case is distinguishable from *Rutherford*, which the Commissioner relies upon to argue that remand is unnecessary. (Def.'s Br. at 5). In *Rutherford*, the plaintiff did not initially claim obesity as an impairment, and the ALJ never acknowledged obesity as a severe impairment. 399 F.3d at 552-53. The Third Circuit in *Rutherford* ultimately held that "remand [wa]s not required . . . because it would not affect the outcome of the case. [Plaintiff] never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments." *Id.* at 553. By contrast, in this case, Ms. Ward initially indicated that obesity affected her ability to work, (Tr. at 42), and ALJ Friedman found her obesity to be a severe impairment at step two of his analysis, (Tr. at 15).

The present case more closely resembles *Diaz*, which limited the reach of *Rutherford*. In *Diaz*, the claimant asserted, and the ALJ specifically determined, that the claimant's obesity constituted a severe impairment. The Third Circuit reasoned that it could not conclude, as it did in *Rutherford*, that claimant's obesity had no impact on her workplace performance. *Diaz*, 577

11

F.3d at 504. Thus, the Third Circuit held that the ALJ's inadequate analysis regarding claimant's obesity at step three warranted remand. *Id.* at 504-05 ("In *Burnett*, we remanded to the ALJ where his summary conclusion omitted any explanation or reasoning. We must vacate and remand here as well."). Where, as here, Claimant asserted that her obesity impacted her ability to work and the ALJ expressly found that her obesity constituted a severe impairment, the Court follows the mandate set forth in *Diaz* and concludes that remand is required due to the ALJ's insufficient consideration of her obesity.

Because the ALJ improperly addressed Ms. Ward's obesity at step three, it necessarily follows that he did not properly assess the combined effects of her obesity with her other impairments at this step. SSR 02-1p provides that an individual with obesity satisfies the requirements of a Listing "if there is an impairment that, in combination with obesity, meets the requirements of a listing." SSR 02-1p, 2002 WL 34686281, at *5. SSR 02-1p recognizes that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing" and notes that "[t]his is especially true of musculoskeletal, respiratory, and cardiovascular impairments" and "may also be true for other coexisting or related impairments, including mental disorders." *Id.* Additionally, SSR 02-1p provides that equivalence to a Listing will be found where an "individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment." *Id.*

Here, the ALJ's decision does not mention how Ms. Ward's obesity may have mitigated or exacerbated the severity of her other individual impairments, nor does the decision address why the combination of all of her impairments, including her obesity, did not equal a Listing. The ALJ's combination analysis merely consists of a blanket statement that "[t]he claimant's

12

impairments, singly or in combination, do not meet or equal the regulatory requirements of any listing." (Tr. at 15). This conclusory statement precludes meaningful judicial review. *See Burnett*, 220 F.3d at 119-20 (finding step-three analysis "beyond meaningful judicial review" because ALJ only offered conclusory statement to support his findings); *see also Elliot v. Astrue*, No. 11-2293, 2012 WL 2870912, at *7 (D.N.J. July 12, 2012) ("The ALJ's failure to provide more than a conclusory statement when tasked with combining and comparing Plaintiff's recognized impairments to the Listings precludes meaningful judicial review."); *Butler*, 2010 WL 3908627, at *7 ("The ALJ's sole conclusory statement that Plaintiff 'does not have an impairment or combination or impairments' that meets the Listings is not enough."). Accordingly, the Court remands this case so that the ALJ can complete his step-three analysis. Further administrative proceedings should address Ms. Ward's obesity at step three, discuss the combined effects of Ms. Ward's obesity and her individual impairments, and detail whether the combination of all of Ms. Ward's impairments, including her obesity, is or is not equivalent in severity to a listed impairment.[4]

## V.  Conclusion

For the foregoing reasons, the Court hereby vacates ALJ Friedman's decision and remands the case for further proceedings consistent with this Opinion. An appropriate Order accompanies this Opinion.

*s/Esther Salas*  
**Esther Salas, U.S.D.J.**

---

[4] The Court notes that the error in the ALJ's combination analysis appears to be more general than just the ALJ's failure to properly incorporate obesity into the step-three analysis. The ALJ did not adequately address *any* combination of Ms. Ward's impairments at step three. Again, "[t]here is no way to review the ALJ's decision [where] no reasons were given for [the ALJ's] conclusion that [the claimant's] impairments in combination did not meet or equal an Appendix 1 listing." *Torres*, 279 F. App'x at 152.